UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CLAIRE MARIE LUENEBURG and SARA MICHELLE ECCLESTON,

Plaintiffs,

v.

EVERETT SCHOOL DISTRICT NO. 2,

Defendant.

CASE NO. C05-2070RSM

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on defendant's Motion for Summary Judgment. (Dkt. #16). Defendant argues that plaintiffs' claims fail as a matter of law because: (1) the school newspaper at issue in this action is a nonpublic forum, and therefore defendant had the right to delete the proposed masthead under both federal and state law; (2) even if the newspaper was an open public forum, defendant had the right to change the nature of that forum; and (3) the school principal has the right to review the newspaper prior to publication under both federal and state law. Plaintiffs respond that summary judgment is not appropriate because material facts are in dispute. (Dkt. #20). Plaintiffs further respond that the school paper is a limited public forum, not a nonpublic forum, and plaintiffs are entitled to remedies

ORDER
PAGE - 1

under both state and federal law.

For the reasons set forth below, the Court agrees in part with plaintiffs, and GRANTS IN PART and DENIES IN PART defendant's motion for summary judgment.

## II.  BACKGROUND

Plaintiffs, Claire Lueneberg and Sara Eccleston, are former students of Everett High School ("EHS") in Everett, WA, who served as co-editors in chief of the *Kodak*, the school's student newspaper. Ms. Lueneberg began serving as co-editor in 2005. Ms. Eccleston also began serving as co-editor in 2005. Ms. Deborah Kalina taught journalism and publications classes at EHS beginning in the 2004/2005 school year. She also served as faculty advisor to the *Kodak*. Prior to Ms. Kalina, Ms. Shirley Ferguson served as the faculty advisor to the *Kodak* from 1989 to 2004.

The *Kodak* is a school-sponsored newspaper. Its staff is comprised of EHS students. The *Kodak* was published several times a semester, and was primarily funded by the sale of advertising to local businesses, and expenses were paid through an Associated Student Body ("ASB") account at the high school. According to plaintiffs, the students were responsible for the sale of advertising, pricing, billing and placement of advertisements. Likewise, the students controlled the content, layout and production of the paper, and were responsible for all of the major editorial decisions. Student editors decided what topics the paper would cover, developed story ideas and assigned stories to student journalists. The faculty advisor provided advice about what stories to run, and checked grammar and spelling so that she could provide grades to the students in the journalism class. According to both Ms. Kalina and Ms. Ferguson, the faculty advisor did not regulate what subjects students covered, nor did the advisor prohibit or edit the content of the articles chosen by the student editors for publication. The *Kodak* covers a wide variety of topics, and has included such controversial topics as sex education, suicide, drug and alcohol abuse and sexual orientation.

1    In April of 2005, the *Kodak* published an article about the selection of the new, and now
2    current, principal Ms. Catherine Matthews. The article focused on the student committee's
3    involvement in the selection process, and noted that Ms. Matthews had been its third choice out
4    of five. The headline for the article read, "EHS New Principal: Third Choice for Student
5    Committee."

6    On or about May 13, 2005, Dr. Greg Johnson, an assistant principal at EHS, came to
7    Ms. Kalina's classroom and informed her that Ms. Matthews had visited the school and had seen
8    a copy of the story written about her selection. Dr. Johnson informed Ms. Kalina that Ms.
9    Matthews had threatened to sue her personally, as well as EHS.

10   At the beginning of the 2005-2006 school year, Ms. Matthews began as principal. In
11   September 2005, she learned that there was someone in the community who may be willing to
12   publish the *Kodak* for free. She then met with Ms. Kalina and plaintiffs, along with Steve
13   Powell from the *Everett Herald*, to discuss the offer. At that meeting, plaintiffs shared their
14   proposed masthead for the paper. It read:

> The KODAK is a student forum for the student body of Everett High School. We are not subject to prior review by administrators, faculty or community members. Editorial decisions are made by the student editors-in-chief and the editorial board. Our right to free speech is guaranteed under the First Amendment of the Constitution and under the Revised Code of Washington (RCW) Article 1, Section 5. Student free speech is also protected by Everett School District Policy 3220.

19   Ms. Matthews objected to the language, explaining that she was concerned that it violated
20   School Board policy. She informed plaintiffs of her concerns and told them that she would not
21   allow them to use the masthead as it was written. She also told them that they could delete the
22   masthead, revise the masthead, or accept the District's proposed version of a masthead.
23   Plaintiffs refused.

24   Plaintiffs allege that this was simply one of many acts of retaliation by Ms. Matthews
25   after the article about her selection had been published in the *Kodak*. Plaintiffs note that not

ORDER
PAGE - 3

1   only did Ms. Matthews object to the masthead, she also demanded that she be allowed to review
2   the newspaper prior to publication. Plaintiffs refused to allow prior review on the basis that
3   prior review had never been required by principals in the past, and that it violated their free
4   speech rights. In response, in late November, Ms. Matthews published the newspaper without
5   the masthead, and without permission from plaintiffs.
6   The next day, November 28, 2005, plaintiffs read an announcement over the school's
7   public address system, informing students that the October issue of the *Kodak* had been printed
8   and distributed without the newspaper staff's knowledge or consent. Immediately afterwards,
9   Ms. Matthew revised the rules governing student announcements, requiring approval by
10  administrators prior to any announcement being read over the public address system.[1]
11  This lawsuit and the instant motion for summary judgment followed.

### III.  LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc*., 818 F.2d 1466, 1468 (9th Cir. 1987).

---

[1] Plaintiffs allege that Ms. Matthews also retaliated against them by barring them from presenting a skit about censorship at the "Goin' Clubbin'" assembly.

ORDER
PAGE - 4

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995); *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th Cir. 1980).

### **IV.  DISCUSSION**

It has long been held that public school students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 506 (1969)). Indeed, they cannot be punished merely for expressing their personal views on the school premises, unless school authorities have reason to believe that such expression will "substantially interfere with the work of the school or impinge upon the rights of other students." *Id.* at 509. However, the United States Supreme Court has also recognized that the First Amendment rights of public school students "are not automatically coextensive with the rights of adults in other settings," *Bethel School District No. 403 v. Fraser*, 478 U.S. 675, 682 (1986), and must be "applied in light of the special characteristics of the school environment." *Tinker*, at 506. *See also Morse v. Frederick*, __ U.S. __, 2007 U.S. LEXIS 8514, at *7-8 (June 25, 2007). Specifically, a school need not tolerate student speech that is inconsistent with its "basic educational mission," *Fraser*,

ORDER
PAGE - 5

at 685, even when the government could not censor similar speech outside of a school.

The seminal case addressing the extent to which educators may exercise control over the contents of high school publications is *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260 (1988). There, the Supreme Court recognized that, "'[t]he determination of what manner of speech in the classroom or in school assembly is inappropriate properly rests with the school board,' rather than with the federal courts. It is in this context that . . . First Amendment claims must be considered." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. at 267. The Ninth Circuit Court of Appeals follows *Hazelwood*, and directs that courts examining this issue:

> must assume that school-sponsored publications are nonpublic and that unless the schools affirmatively intend to open a forum for indiscriminate use, restrictions reasonably related to the school's mission that are imposed in the context of school-sponsored publications do not violate the first amendment.

*Planned Parenthood of Southern Nev. v. Clark County School Dist.*, 941 F.2d 817 (9th Cir. 1991). Thus, in the instant case, this Court must address: (1) whether the *Kodak* is a forum for public expression; (2) whether the *Kodak* bears the imprimatur of the school, such that it is within the intended purpose for which the forum is reserved; and (3) whether Ms. Matthews and Everett School District No. 2 were justified in refusing to accept the masthead proposed by plaintiffs and requiring review by the principal prior to publication. *See id.* at 820.

Plaintiffs have brought suit against defendant under the First Amendment of the United States Constitution, 42 U.S.C. § 1983, Article 1, Section 5 of the Washington State Constitution and the Revised Code of Washington (RCW) 28A.645.010, seeking to redress the alleged deprivation of First Amendment rights. As noted above, plaintiffs claim that defendant violated their rights under the First and Fourteenth Amendments by refusing to publish the masthead proposed by plaintiffs and by requiring review of the newspaper by the principal prior to publication. Plaintiffs further allege that the actions taken by defendant were retaliation for a story printed about the selection of Ms. Matthews as principal, denying plaintiffs access to and participation in school announcements, assemblies, and the school newspaper. The Court first

ORDER
PAGE - 6

turns to plaintiffs' arguments concerning the proposed masthead.

**A. Student Expression - Masthead**

Plaintiffs are former EHS students, who acted as co-editors-in-chief of the *Kodak* at all time relevant to this action. Defendant, Everett School District No. 2, is a municipal corporation located in Snohomish County, Washington, and its purposes include providing educational opportunities and maintaining and managing Everett High School. Defendant authorizes EHS to publish a school newspaper. The *Kodak* was written, edited, produced and published through a publications class, which is part of EHS's regular curriculum. The class is taught by a teacher/adviser employed by defendant, who selected student editors from the members of the class. Students in the class are graded on their work and given course credit that appears on their official school transcripts. Defendant paid *Kodak* expenses through an ASB account at EHS. The *Kodak* was subject to defendant's policies and procedures.

In March 1995, defendant adopted (and subsequently updated in March 2001) Policy 3220, which states its opinion on freedom of expression. The policy states:

> The free expression of student opinion is an important part of education in a democratic society. Students' verbal and written expression of opinion on school premises is encouraged so long as it does not substantially disrupt the operation of the school. Students are expressly prohibited from the use of vulgar and/or offensive terms in classroom or assembly settings.
>
> The Superintendent shall develop guidelines assuring that students are able to enjoy free expression of opinion while maintaining orderly conduct of the school.

(Dkt. #21, Ex. 9). At the same time, defendant adopted Procedure 3220P, which set forth a process by which a principal would determine whether expression was considered disruptive.

In September 1997, defendant adopted (and subsequently updated in March 2001) Policy 3221, pertaining to student publications. The policy states:

> Student publications produced as part of the school's curriculum or with the support of the associated student body fund are intended to serve both as vehicles for instruction and student communication. They are operated and substantively financed by the district.

ORDER
PAGE - 7

>Material appearing in such publications should reflect all areas of student interest, including topics about which there may be controversy and dissent. Controversial issues may be presented provided they are treated in depth and represent a variety of viewpoints. Such materials may not: be libelous, obscene or profane; cause a substantial disruption of the school, invade the privacy of others; demean any race, religion, sex, or ethnic group; or, advocate the violation of the law or advertise tobacco products, liquor, illicit drugs, or drug paraphernalia.
>
>The superintendent shall develop guidelines to implement these standards and shall establish procedures for the prompt review of any materials which appear not to comply with the standards.

(Dkt. #21, Ex. 6).

Shortly thereafter, defendant adopted Procedure 3221P, providing:

>The student publications instructor or advisor shall have the primary responsibility for supervising student publications and to see that provisions incorporated into the policy and procedures are met. The principal may request to review any copy prior to its publication. Such copy shall be returned to the student editors within 24 hours after it has been submitted for review.
>
>Any dispute that cannot be resolved at the building level shall be submitted to the Superintendent for further consideration. When appropriate, the Superintendent shall seek legal counsel. If the complaint cannot be resolved at that level, the Board, upon request, shall consider the complaint at its next regular meeting.
>
>While the District believes that students should be encouraged to exercise good judgment in the content of the student publication program, such expressive writing must be in keeping with the school's instructional mission and values. Material must be free of content that: runs counter to the instructional program; invades the privacy of individuals; demeans or otherwise damages individuals or groups; supports the violation of school rules or, is inappropriate for the maturity level of the students. Such publication activities must also teach respect for the sensitivity of others and standards of civility as well as the elements of responsible journalism.

(Dkt. #21, Ex. 7).

In September 2005, plaintiffs proposed the following masthead for the *Kodak*:

>The KODAK is a student forum for the student body of Everett High School. We are not subject to prior review by administrators, faculty or community members. Editorial decisions are made by the student editors-in-chief and the editorial board. Our right to free speech is guaranteed under the First Amendment of the Constitution and under the Revised Coade of Washington (RCW) Article 1, Section 5. Student free speech is also protected by Everett

ORDER
PAGE - 8

School District Policy 3220.

(Dkt. #17 at 3). Ms. Matthews objected to the masthead based on her conclusion that the language did not accurately describe the kind of forum to which the *Kodak* belongs. (Dkt. #17 at 3). She also felt the language directly conflicted with Board policy. As a result, she directed the students to alternatives, and asked to review the paper before it was published. She asserts that it was never her intent to censor student articles or editorials. Instead, she wanted to make sure that the issue complied with Board policy and did not contain materials which are prohibited by Board policy. (Dkt. #17 at 3).

The parties agree that the masthead is protected speech under the first amendment. Therefore, the Court must first resolve whether the *Kodak* is a forum for public expression. *Hazelwood*, 484 U.S. at 267; *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985).

In *Hazelwood*, the Supreme Court directed that "school facilities may be deemed to be public forums only if school authorities have 'by policy or by practice' opened those facilities 'for indiscriminate use by the general public,' or by some segment of the public, such as student organizations." 484 U.S. at 267 (citing *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 47 (1983)). "If, on the other hand, school facilities have been reserved for other intended purposes, 'communicative or otherwise,' no public forum will have been created and reasonable restrictions on speech may be imposed." *Planned Parenthood of S. Nev.*, 941 F.2d at 822 (citation omitted). When identifying the relevant forum, courts focus "on the access sought by the speaker." *Cornelius*, 473 U.S. at 801. Here, the school's intent is the critical factor in the forum calculus. *Hazelwood*, 484 U.S. at 267.

In determining whether school officials evinced any intent to open the *Kodak* to indiscriminate use, this Court looks at a variety of factors, including, but not limited to: (1) whether it was produced as part of the school curriculum; (2) whether students received

ORDER
PAGE - 9

ORDER
PAGE - 9

grades and academic credit for completing the course, which a faculty member taught; (3) whether the school ever deviated in its practice from its policy of publishing the paper as part of the school curriculum; (4) whether the faculty advisor/teacher exercised a great deal of control over the production of the paper; (5) whether the faculty advisor or principal was required to review and approve each issue prior to publication; and (6) what school board policies and procedures say about student publications. *See Planned Parenthood of S. Nev.*, 941 F.2d at 823.

In the instant case, there is no dispute that the *Kodak* was produced as part of the school curriculum, that students received grades and academic credit for completing the course, and that the *Kodak* was supervised by a faculty advisor who also taught the publications class. Further, there is no dispute that board policy and procedures specifically allowed for review by the principal prior to publication, and that the *Kodak* was produced as part of the school's curriculum and intended to serve both as a vehicle for instruction and as student communication. The *Kodak* was published by, and expenses were paid through, the school district.

However, plaintiffs have produced evidence that the *Kodak* was not maintained exclusively as part of the school curriculum. Indeed, the *Kodak* was listed as a school club in the student handbook, it participated in campus day activities, and it was presented at the freshman and 8th grade orientations as a club for students. In addition, staff members often worked long hours outside of the school day to edit and produce each issue. The students also sold advertising on the weekends, and engaged in various fundraising activities in support of the *Kodak*. In addition, both plaintiffs and the most recent faculty advisors, Ms. Kalina and Ms. Ferguson, insist that the advisors asserted very little control over the paper. They state that the students controlled every major facet of the operating, production and publication of the *Kodak*. (Dkts. #23, #24, #25 and #29). Further, they state that, historically, students had never been prevented from publishing articles on controversial topics, and that the paper had never been

ORDER
PAGE - 10

reviewed by the principal prior to publication. Publications in other high schools in the district, such as Cascade High School's *Stehikin* newspaper and *Tyro* magazine, operated in the same manner. Thus, the Court agrees with plaintiffs that there are genuine issues of material fact with respect to whether school officials clearly intended to create a nonpublic forum, or whether the *Kodak* was intended to operate as a limited public forum.

As a result, defendant's argument that it may limit what has previously been an open forum is now premature. Defendant argues that if the Court is persuaded the *Kodak* is something other than a nonpublic forum, the law allows a school district to reassert control over forums within schools. Defendant relies on *DiLoreto v. Downey Unified School Dist.*, 196 F.3d 958 (9th Cir. 1999), in support of its argument. Because the Court has found that factual questions pertaining to the type of forum categorizing the *Kodak* remain to be resolved, it is not necessary to address defendant's argument at this time. However, nothing prevents defendant from raising the argument again, should the finder of fact determine that the *Kodak* is a limited public forum as plaintiffs assert.

### B. Prior Review by Principal

Defendant next argues that prior review of the newspaper by Ms. Matthews is not a prior restraint under either federal or state law. Specifically, defendant asserts that since the preview, by and of itself, does not prohibit any publication, it is not a prior restraint. Instead, defendant argues that the preview merely regulates the time of when the paper will be published and the manner in which the publication will occur. The Court agrees.

Washington law imposes a stricter standard of review than federal law over allegations of a prior restraint of protected speech. *See State v. E.J.Y.*, 113 Wn. App. 940, 946 (2002) (noting that free speech is interpreted more broadly under the Washington constitution than under the federal constitution); *DCR, Inc. v. Pierce County*, 92 Wn. App. 660, 675 (1998) (explaining that if an alleged action constitutes a prior restraint on protected speech, the

ORDER
PAGE - 11

Washington constitution affords greater protection than the federal constitution). Thus, if defendant's actions do not constitute prior restraint under Washington law, neither would they constitute prior restraint under federal law. In Washington, a prior restraint is defined as an administrative or judicial order forbidding communications prior to their occurrence. *DCR*, 92 Wn. App. At 675. "Simply stated, a prior restraint prohibits future speech, as opposed to punishing past speech." *Id.* However, it is well-settled that government may impose reasonable time, place, and manner restrictions on speech that is (1) content neutral, (2) narrowly tailored to serve a substantial governmental interest, and (3) leave open alternative channels for communication. *Id.* At 676.

In this case, the Court agrees with defendant that the review process itself is not a prior restraint because it does not actually prohibit any publication. *See Weaver v. United States Info. Agency*, 87 F.3d 1429, 1441-42 (D.C. Cir. 1996) (finding the review requirement at issue to be permissible because it did not prevent publication, but simply required review prior to publication). It is true that if the principal decides that particular material is inappropriate, and forbids the *Kodak* staff from publishing it, the review process could lead to a prior restraint. However, simply requiring that the principal be allowed to review the *Kodak*, and that the principal complete the review 24 hours before the paper is published, does not itself prohibit future speech, and therefore, does not constitute a prior restraint.

Likewise, the Court agrees with defendant that the procedure is not unlawfully broad. Everett Board Policy 1312 provides the superintendent with the authority to develop administrative procedures that ensure consistent implementation of board policies. (Dkt. #32, Ex. 7). A process by which a principal may review a school newspaper prior to publication allows the principal to determine whether something comports with board policy or raises concern. Thus, the Court finds that Procedure 3221P is not overbroad. For these reasons, the Court finds that summary judgment in favor of defendant is appropriate, and plaintiffs' prior

ORDER
PAGE - 12

restraint claims must be dismissed.

### C. Cause of Action Under Washington State Constitution

Defendant next argues that plaintiffs' claims pursuant to Article 1, Section 5 of the Washington State Constitution must be dismissed because that constitution affords no greater protection than the federal constitution when the forum for expression is a nonpublic forum. Defendant further argues that there is no private right of action for monetary damages under that section. The Court is not persuaded.

Defendant has misinterpreted the holdings of the cases it relies on in support of its position. *Benjamin v. WSBA* does not stand for the proposition that no private cause of action for monetary damages under Article 1, Section 5 exists. Indeed, in *Benjamin*, the Washington State Supreme Court explicitly noted that the WSBA could be sued under Article I, Section 5 of the state constitution. 138 Wn.2d 506, 516 n. 49 (1999). However, "[a]ssertion of more rights under the Washington Constitution than under the federal constitution requires a *Gunwall* analysis." *Id.* (citations omitted). Because the appellant did not provide that analysis, the court chose not to address "whether there is an implied cause of action under the free speech clause of the state constitution." *Id.* Likewise, *Reid v. Pierce County*, which addresses Article 1, Section 7 of Washington's Constitution, makes no direct comment on Section 5, and merely determined that "Plaintiffs may obtain adequate relief under the common law and [] such actions are better addressed under the common law invasion of privacy action." 136 Wn.2d 195, 213 (1998). Accordingly, the court declined to reach the issue of whether a private cause of action under the state constitution existed. *Id.* Finally, *Furfaro v. City of Seattle*, is not persuasive. There, the Washington Supreme Court found that "United States Supreme Court cases decided subsequent to *O'Day*, [a Washington Supreme Court case], are more authoritative indications of the amount of protection given to nude dancing by the First and Fourteenth Amendments to the United States Constitution." 144 Wn.2d 363, 371-372 (2001). The court made no comment on

whether a private cause of action under Article 1, Section 5 existed.[2] More importantly, Washington courts that have performed a *Gunwall* analysis have often found that Article 1, Section 5 offers more protection than the federal constitution. *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 117-19 (1997); *Alderwood Assocs. v. Wash. Envtl. Council*, 96 Wn.2d 230, 244 (1981) (concluding that "section 5 . . . [is] applicable when, after balancing all the interests, the balance favors the speech and initiative activity."). Accordingly, we are not persuaded by defendant that plaintiffs do not have a private cause of action under the Washington State Constitution.

Defendants argue that, even if this Court recognizes a private cause of action under the state constitution, plaintiffs' claims must fail because the *Kodak* is a public forum, subject to reasonable restrictions, and is afforded no greater protection under Washington's constitution than under the federal constitution. For the reasons set forth above, the Court finds this argument premature. It declines to address this argument until the finder of fact has resolved factual issues pertaining to the type of forum characterizing the *Kodak*. Nothing in this Order prevents defendant from raising the argument in the future, should it become appropriate.

### D. Retaliation

Lastly, this Court notes that defendant argues for the first time in its Reply brief that no actionable retaliation exists in this case, and therefore plaintiffs' retaliation claims should be dismissed. However, this Court declines to consider arguments raised for the first time in a Reply brief because plaintiffs were afforded no opportunity to respond. Accordingly, the Court finds that summary judgment is not appropriate on those claims.

## V. CONCLUSION

---

[2] The Court agrees that there can be no § 1983 claim for violation of the Washington state constitution. Therefore, to the extent that plaintiffs assert such claim, that claim is dismissed. *Furfaro*, 144 Wn.2d 363, 376 (2001) (explaining that "a claim under article I, sections 5 and 7 of the Washington State Constitution does not come within the scope of 42 U.S.C. § 1983.").

ORDER
PAGE - 14

1      The Court, having reviewed defendant's motion, plaintiffs' opposition, defendant's reply, the declarations and exhibits in support of those briefs, and the remainder of the record, hereby ORDERS that defendant's Motion for Summary Judgment (Dkt. #16) is GRANTED IN PART and DENIED IN PART as set forth above. The Clerk shall forward a copy of this Order to all counsel of record.

    DATED this 13th day of July, 2007.

                                                             RICARDO S. MARTINEZ
                                                             UNITED STATES DISTRICT JUDGE